IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUNAWAY RECORDS PRODUCTIONS, LLC, Plaintiff, | ) | |
| v. | ) | Civil Action No. 21-752 |
| FRANCISCAN UNIVERSITY OF STEUBENVILLE, Defendant. | ) | |

**MEMORANDUM OPINION**

Presently before the Court is the Partial Motion to Dismiss Counts II-IV of Plaintiff's Amended Complaint, filed by Defendant Franciscan University of Steubenville (the "University"), for failure to state claims upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Memorandum in Support (Docket Nos. 11, 12), as well as the Response and Brief in Opposition filed by Plaintiff Runaway Records Productions, LLC ("Runaway") (Docket Nos. 13, 14), and the University's Reply (Docket No. 16). For the reasons set forth herein, the University's motion is granted in part and denied in part.

## I. Background

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts as alleged in the Amended Complaint and in the light most favorable to Runaway.

The University is located in Steubenville, Ohio. (Docket No. 10, ¶ 9). Since 2014, the parties have been in a contractual relationship in which Runaway has provided various production services, including, but not limited to, audio and visual production, broadcasting, and videotaping

of various conferences, religious services, and concerts. (*Id.* ¶¶ 8, 10). The parties entered into their most recent contract in the form of an Independent Contractor Agreement (the "Agreement") on or about February 26, 2020, covering calendar years 2020, 2021, and 2022. (*Id.* ¶¶ 11, 25; Docket No. 10-1). Pursuant to this Agreement, Runaway agreed to provide its services for several in-person conferences held at the University's main campus between June 2020 and August 2020, along with other video processing, recording, and duplication services, and to provide similar services for calendar years 2021 and 2022. (Docket Nos. 10; 10-1 at 2). However, the University canceled its events in 2020 after the onset of the COVID-19 pandemic and then did not remit payment to Runaway for contracted-for services. (Docket No. 10, ¶¶ 13, 28, 30, 55). Even then, the University continued to possess Plaintiff's equipment and permitted another vendor to use it for the University's benefit. (*Id.* ¶¶ 41, 64, 70). This action ensued.

Runaway's Amended Complaint alleges claims against the University for breach of contract (Count I), tortious interference (Count II), unjust enrichment (Count III), and conversion (Count IV). (Docket No. 10). In response, the University filed a Partial Motion to Dismiss Counts II-IV of the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Docket No. 11). The University's motion and supporting briefs also seek to strike Exhibit B to the Amended Complaint along with related averments concerning settlement discussions. (Docket No. 12 at 6-7). The motion has been fully briefed by the parties and it is now ripe for decision.

## II. <u>Standards of Review</u>

### A. <u>Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the

plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

**B. Moton to Strike Pursuant to Fed. R. Civ. P. 12(f).**

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Bessemer Sys. Fed. Credit Union v. Fiserv Solutions, LLC*, 472 F. Supp. 3d 142, 155 (W.D. Pa. 2020) (internal quotation marks and citations omitted). "A decision to grant or deny a motion to strike a pleading is vested in the trial court's discretion." *Id*. (internal quotation marks and citations omitted). However, motions to strike "'are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Id*. (quoting *Hay v. Somerset Area Sch. Dist.*, Case No. 3:16-cv-229, 2017 WL 2829700, at *3 (W.D. Pa. June 29, 2017) (quoting *Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 443 (W.D. Pa. 2010))).

## III. Discussion

### A. Choice of Law

The choice of law rules of the forum state—here, Pennsylvania—apply to litigation before a federal court sitting in diversity. *See Specialty Surfaces Int'l, Inc. v. Continental Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In that regard, Pennsylvania courts generally apply the state law that the parties have agreed upon. *See DL Resources, Inc. v. FirstEnergy Solutions Corp.*, 506 F.3d 209, 216 (3d Cir. 2007) (citing *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 920 (Pa. Super. Ct. 2002) ("In contract disputes, Pennsylvania courts generally honor the parties' choice of law provisions.")). Accordingly, Ohio law will apply to Plaintiff's breach of contract claim at Count I of the Amended Complaint because the Agreement at issue contains a choice of law provision stating that "[t]his [A]greement shall in

all respects be interpreted, enforced, and governed under the laws of the State of Ohio." (Docket No. 10-1 at 6).

The University's motion does not concern Runaway's breach of contract claim at Count I, but instead seeks to dismiss Runaway's common law claims asserted at Counts II through IV. Runaway does not clearly state its position on whether Pennsylvania or Ohio law applies to these claims. For its part, the University contends that Ohio law applies to these claims because of the choice of law provision contained in their Agreement. However, the choice of law provision "'do[es] not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship.'" *Broederdorf v. Bacheler*, 129 F. Supp. 3d 182, 191 (E.D. Pa. 2015) (quoting *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994)). "[C]ourts analyze choice of law provisions to 'determine, based [up]on their narrowness or breadth, whether the parties intended [for the agreement] to encompass all elements of their association.'" *Grimm v. Citibank (S. Dakota), N.A.*, Civil Action No. 08-788, 2008 WL 4925631, at *4 (W.D. Pa. Nov. 14, 2008) (quoting *Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.*, 795 F. Supp. 151, 157 (W.D. Pa. 1992)). For example, the court in *Jiffy Lube* found that the use of "this agreement" in the choice of law provision at issue demonstrated its restricted scope and its applicability only to the contract claims at issue. *See* 848 F. Supp. at 576.

Based on the foregoing principles, the Court finds that the Agreement between the parties is narrowly drawn because the language in its choice of law provision speaks only to "this agreement," and not to all matters concerning the parties. Accordingly, the contractual choice of law provision does not apply to Runaway's non-contract claims at Counts II through IV of the Amended Complaint.

Where, as here, a contractual choice of law provision does not apply to particular claims,

the Court must separately analyze the remaining claims to determine the law that applies. *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) ("Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case."). The first step is to determine if there is an actual or real difference between the potentially applicable laws. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If no difference exists, no further analysis is necessary, and the law of the forum state applies. *See id.; see also State Farm Fire & Cas. Co. v. Holmes Prods.*, 165 F. App'x 182, 185 n.1 (3d Cir. 2006) ("[B]ecause there is no conflict between the laws of other states that may have an interest . . . a court shall apply the law of the forum state.").

### B. Application of Pennsylvania Law to Plaintiff's Non-Contractual Claims

#### 1. Count II – Tortious Interference with Business Relations

There appears to be no meaningful difference between the elements required to establish tortious interference claims under Pennsylvania law and Ohio law, and the parties do not identify any such differences.[1] Under Pennsylvania law, in order to recover damages for the tort of intentional interference with an existing or prospective contractual relation, Plaintiff must plead and prove the following elements:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
>
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
>
> (3) the absence of privilege or justification on the part of the defendant; and

[1] Runaway asserts that Ohio and Pennsylvania similarly adopt section 767 of the Restatement (Second) of Torts, implying that there is no difference or conflict. (Docket No. 14 at 8). While the University mistakenly contends that the choice of law provision in the parties' Agreement governs Runaway's non-contract claims, it likewise identifies no conflicts between Pennsylvania and Ohio law applicable to those claims. (Docket No. 16 at 1-2).

(4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997); *see also Pittsburgh Logistics Sys., Inc. v. Cox Logistics LLC*, No. 20-817, 2021 WL 811394, at *8 (W.D. Pa. March 3, 2021); *Germain v. Wisniewski*, No. 15-1279, 2016 WL 4158994, at *7 (W.D. Pa. Aug. 5, 2016) (quoting *Acumed LLC v. Advanced Surgical Servs. Inc.*, 561 F.3d 199, 212 (3d Cir. 2009)); *cf. Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.*, 774 N.E.2d 775, 780 (Ohio Ct. App. 2002) (delineating the elements of a tortious interference claim); *Super Sulky, Inc. v. U.S. Trotting Ass'n.*, 174 F.3d 733, 741 (6th Cir. 1999) (stating that Ohio law recognizes causes of action for both tortious interference with a business relationship and tortious interference with contract rights, and further stating that they differ only in that one requires proof of a contractual relationship), *cert. denied*, 528 U.S. 871 (1999). In the absence of any conflicting differences, the Court will apply Pennsylvania law.

Runaway alleges that the University breached their Agreement, "force[ed]" Runaway to "accept new, less beneficial terms," and prevented Runaway from "engaging in any new production contracts with third parties" while knowing that Runaway was struggling financially. (Docket No. 10, ¶¶ 45-60). Runaway further alleges that the University "interfered with the prospective contracts and financial arrangements [Runaway] had with third parties." (*Id.* ¶ 51). The University seeks dismissal of this claim, arguing, in essence, that Runaway failed to plead action on the part of the University specifically intended to harm Runaway's existing business relations with third parties, or to prevent such prospective business relations from occurring. Rather, according to the University, Runaway merely repackaged its breach of contract claim as a tort, alleging that the consequence of the University's intentional breach of the parties' Agreement interfered with prospective contracts with those unidentified third parties. The Court agrees.

Pennsylvania does not recognize a cause of action for tortious interference where the plaintiff's business relationships with third parties are adversely affected as a consequence of a defendant's breach of contractual obligations to the plaintiff.[2] *See Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 951 (E.D. Pa. 1998) (citing *Glazer v. Chandler*, 200 A.2d 416, 418 (Pa. 1964)). However, Pennsylvania does recognize the possibility of such claims if the breaching conduct "is undertaken with the intention of injuring the plaintiff's business relationships." *Id*. (citing *George A. Davis, Inc. v. Camp Trails Co.*, 447 F. Supp. 1304, 1310 (E.D. Pa. 1978)). Even so, it is not sufficient to show that the University intentionally breached its contract or that the University should have foreseen that its breach would have caused Runaway to lose business. *See id.* at 951-52. Rather, Runaway "must show that the [University] acted for the malevolent purpose of interfering with [its] existing or prospective business relationships." *Id*. at 951.

Here, Runaway has averred that the University intentionally breached the parties' Agreement, knowing that doing so would cause Runaway to be "unable to pay its employees, service providers, vendors, contractors, equipment manufacturers and distributors for any new production work" and would "prevent [Plaintiff] from engaging in any new production contracts with third parties." (Docket No. 10, ¶¶ 53-54). Courts have held that such averments outlining foreseeable consequences of breaching a contract are not sufficient to plead a tortious interference claim. *See Valley Forge Convention & Visitors Bureau*, 28 F. Supp. 2d at 952. Runaway contends, however, that it also has pled, in essence, a malevolent purpose by averring that "[The University's] motive in this interference was to ensure that Runaway would be crippled, unable to take on any new production contracts with third parties if Runaway was mired in a forced contract

---

2 Again, there is no conflict between Pennsylvania and Ohio law on this point. *See Reengineering Consultants, LTD. v. EMC Corp.*, No. 2:08-cv-47, 2009 WL 113058, at *6 (S.D. Ohio Jan. 14, 2009).

renegotiation with [the University]." (Docket No. 10, ¶ 52). However, when reading this averment in the context of Runaway's Amended Complaint as a whole, this averment alleges that the University's motive was to cripple Runaway to "force" it to renegotiate the parties' Agreement (*id.* ¶¶ 12, 13(c), 35, 36, 49, 55, 57). *See Iqbal*, 556 U.S. at 679 (explaining that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). Again, courts have held that "[a] breach of contract motivated by a defendant's desire to reduce costs or increase profits or to avoid the consequences of a 'bad bargain'" – such as the absence of a *force majeure* clause to protect from the vicissitudes of a global pandemic – "will not support an intentional interference claim." *Valley Forge Convention & Visitors Bureau*, 28 F. Supp. 2d at 952 (citing *George A. Davis, Inc.*, 447 F. Supp. at 1310).

The Court therefore finds that Runaway has failed to state a plausible claim of tortious interference with business relations. Accordingly, Count II of the Amended Complaint will be dismissed without prejudice.

**2. <u>Count III – Unjust Enrichment</u>**

Runaway alleges a claim for unjust enrichment as an alternative to its breach of contract claim. (Docket No. 10, ¶¶ 61-68). More specifically, Runaway asserts that the University was in possession of its equipment and continued to use such equipment for its events despite failing to pay for such possession and usage. (*Id.*). The University argues, however, that Runaway has not sufficiently pled the elements necessary to prove its unjust enrichment claim.

Like the tortious interference claim, there appears to be no meaningful difference between the elements required to establish an unjust enrichment claim under Pennsylvania law and Ohio law, and the parties do not identify any such differences. Under Pennsylvania law, to establish

unjust enrichment, Runaway must plead and prove the existence of "'[1] benefits conferred on defendant by plaintiff, [2] appreciation of such benefits by defendant, and [3] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995) (quoting *Wolf v. Wolf*, 514 A.2d 901, 905-06 (Pa. Super. Ct. 1986), *overruled on other grounds*, *Van Buskirk v. Van Buskirk*, 590 A.2d 4 (Pa. 1991)); *cf. Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F. Supp. 2d 763, 771-72 (N.D. Ohio 2004) (stating that "the three necessary requirements for unjust enrichment claims [are]: (1) plaintiff conferred a benefit on defendant; (2) defendant knew of such benefit; and (3) defendant retained the benefit under circumstances where it would be unjust to do so without payment"). Again, in the absence of any conflicting differences, the Court will apply Pennsylvania law.

The University contends that Runaway's unjust enrichment claim is precluded by the parties' Agreement and therefore should be dismissed. Indeed, under Pennsylvania law, Runaway may not recover under a theory of unjust enrichment if the parties' relationship is governed by a written contract. *See Brezinski v. Widener University*, 582 F. Supp. 3d 257, 267-68 (E.D. Pa. 2022) (citing *Shafer Elec. & Constr. v. Mantia*, 67 A.3d 8, 13 (Pa. Super. Ct. 2013), *aff'd on other grounds*, 96 A.3d 989 (Pa. 2014)); *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012) ("Unjust enrichment is a 'quasi-contractual doctrine' that does not apply in cases where the parties have a written or express contract." (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987)). Nevertheless, "a party may plead alternative theories of breach of contract and unjust enrichment when there is a dispute about the existence or validity of the contract in question." *Power Restoration Int'l, Inc. v. Pepsico, Inc.*, No. 12-1922, 2013 WL 5636618 at *6, (E.D. Pa. Oct. 11, 2013) (internal citations and quotation

marks omitted); *see also Khawaja v. RE/MAX Cent.*, 151 A.3d 626, 633 (Pa. Super. Ct. 2016). Here, however, the parties do not dispute the existence or validity of an agreement that governs their relationship, so it is nonetheless appropriate to dismiss the unjust enrichment claim even though pled in the alternative.[3] *See Brezinski*, 582 F. Supp. 3d at 268 (citing *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014)); *Hickey v. Univ. of Pittsburgh*, 535 F. Supp. 3d 372, 380 (W.D. Pa. 2021) ("[A]n unjust enrichment claim cannot stand where it addresses conduct within the scope of the parties' agreement – even if the contract does not have a precise term governing the dispute at issue.").

The Court therefore finds that Runaway has failed to state a plausible claim of unjust enrichment. Accordingly, Count III of the Amended Complaint will be dismissed without prejudice.

**3. Count Four – Conversion**

Like the unjust enrichment claim, the University also seeks to dismiss Runaway's conversation claim because of the existence of the parties' Agreement that governs their relationship. And, again, the parties do not identify any difference or conflict between Pennsylvania and Ohio law regarding conversion claims. Under Pennsylvania law, conversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification. *See Hickey*, 535 F. Supp. 3d at 381 (citing *Pioneer Com. Funding Corp. v. Am. Fin. Mortg. Corp.*, 855 A.2d 818, 827 (Pa. 2004)); *cf. RAE Assocs., Inc. v. Nexus Commc'ns, Inc.*, 36 N.E.3d 757, 765 (Ohio Ct. App. 2015) (delineating the elements of the tort of conversion) (citing

[3] *See* Docket No. 10, ¶ 25, and Docket No. 12 at 12. However, in the event the University subsequently asserts defenses to Runaway's breach of contract claim that challenge the existence or validity of the parties' Agreement, then upon a sufficiently supported motion, Runaway will be granted leave to amend its Amended Complaint to add an alternative claim for unjust enrichment.

*Dice v. White Family Cos., Inc.*, 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007)). Accordingly, the Court will apply Pennsylvania law.

The University contends that the conversion claim should be dismissed because Runaway's purported right to its equipment is "factually intertwined" with the parties' Agreement that is the subject of Runaway's breach of contract claim. Courts applying Pennsylvania law have dismissed conversion claims under the gist of the action doctrine where the alleged entitlement to the chattel arises solely from the contract between the parties. *See Premier Payments Online, Inc*, 848 F. Supp. 2d at 529 (citing *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 622-23 (E.D. Pa. 2010) (collecting cases)). "However, '[w]hen a plaintiff has a property interest in the thing that is the subject of a [conversion] claim, the gist of the action doctrine does not bar recovery under a conversion theory even though the property may also be the subject of a contract.'" *Id*. (quoting *Brown & Brown, Inc*., 745 F. Supp. 2d at 623).

Here, Runaway avers that the parties' Agreement requires it to provide audio, visual, production, and other related services for a three-year period covering years 2020, 2021, and 2022, and that the University terminated the Agreement in 2020. (Docket No. 10, ¶¶ 11, 12). Runaway further avers that it had purchased equipment and installed it on the University's campus for use when delivering contracted-for services during the 2020-22 period, and that despite terminating the parties' Agreement in 2020, the University has retained possession of this equipment and has used it or permitted another vendor to use such equipment for its own benefit. (*Id.* ¶¶ 14, 17, 19, 41, 64, 70, 71, 72). Accordingly, at this preliminary stage of the litigation, the Court declines to determine whether the gist of the action doctrine bars the conversion claim. *See Premier Payments Online, Inc*, 848 F. Supp. 2d at 529 (citing cases).

Accordingly, the University's Partial Motion to Dismiss is denied to the extent it seeks the dismissal of Count IV of the Amended Complaint.

**C. Runaway's Averments and Exhibits Concerning Settlement Discussions**

In addition to seeking dismissal of Counts II, III, and IV, the University also seeks to strike Exhibit B from the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) for containing settlement discussions that could be deemed inadmissible pursuant to Federal Rule of Evidence 408.[4]

Federal Rule of Evidence 408 provides, in pertinent part:

> (a) Prohibited Uses. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction:
>
> (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case . . . .
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The University contends that Exhibit B to the Amended Complaint contains inadmissible settlement discussions that could be offered to prove or disprove the validity or amount of a

[4] In its briefing, the University argues that the Court should strike Exhibit B from the Amended Complaint pursuant to Fed. R. Civ. P. 12(f). (Docket Nos. 12, 16). The Court takes note, however, that the University's motion itself seeks as an alternative to its partial motion to dismiss that Plaintiff be ordered to plead a more definite statement as to damages pursuant to Fed. R. Civ. P. 12(e). (Docket No. 11). Because both parties have construed this portion of the University's motion, through their briefing, as being a motion to strike, the Court likewise construes the University's motion in this regard as a motion to strike pursuant to Fed. R. Civ. P. 12(f). The Court also notes that the University's briefing, at times, expresses a desire to strike not just Exhibit B but also certain related averments set forth in the Amended Complaint. However, the University never identifies which averments that it requests be stricken, by paragraph number or otherwise, so the Court will not attempt to identify averments to be stricken that the University itself did not identify.

disputed claim, while Runaway contends that these materials would be admissible when offered for another purpose.[5]

Either party may be correct as to the issue of admissibility, but that determination is premature at this nascent pleading stage of the action. For now, though, the question before the Court is whether the putative settlement discussions reflected in Exhibit B to the Amended Complaint are immaterial to Plaintiff's claims. In the Court's estimation, the contents of Exhibit B are potentially inadmissible and not necessary to support the claims Plaintiff attempts to aver, and thus Exhibit B is presently immaterial and should be stricken from the Amended Complaint pursuant to Rule 12(f). *See Ciolli v. Iravani*, 625 F. Supp. 2d 276, 289 (E.D. Pa. 2009) (striking portions of a complaint that allege evidence of settlement negotiations). However, the Court makes this determination without prejudice to either party's ability to seek or oppose discovery concerning these materials or proffer or oppose the introduction of such materials into the evidentiary record at an appropriate time in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and applicable law.

**IV. Conclusion**

For the reasons stated, the University's Partial Motion to Dismiss Counts II, III, and IV of Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) is granted in part and denied in part. To the extent the University's motion seeks the dismissal of Counts II and III of the Amended Complaint, the motion is granted. To the extent the University's motion seeks the dismissal of Count IV of the Amended Complaint, the motion is denied. Accordingly, Counts II and III of the

---

[5] Runaway also argues that these materials should not be stricken based upon case law regarding the scope of discovery pursuant to Federal Rule of Civil Procedure 26. However, whether and to what extent parties may undertake discovery involving potentially inadmissible settlement discussions is far afield of the issue presently before the Court.

Amended Complaint are dismissed without prejudice to amendment with sufficient facts to state a claim upon which relief can be granted.

Furthermore, to the extent the University's motion seeks to have Exhibit B stricken from the Amended Complaint pursuant to Rule 12(f), the motion is granted, and Exhibit B is stricken from the Amended Complaint. The Court's determination in this regard is made without prejudice to either party's ability to seek or oppose discovery concerning these materials or proffer or oppose the introduction of such materials into the evidentiary record at an appropriate time.

An appropriate Order follows.

Dated: October 5, 2022

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record